UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

KIM MARIE DAVIDSON,                          Civil Action No. 2:16-cv-0102

      Plaintiff                          CHIEF JUDGE WAVERLY D.
v.                                           CRENSHAW, JR.

COMMISSIONER OF SOCIAL                       MAGISTRATE JUDGE STEPHANIE
SECURITY,                                    DAWKINS DAVIS

      Defendant.
_____/

**REPORT AND RECOMMENDATION**
**PLAINTIFF'S MOTION FOR JUDGMENT ON THE RECORD (Dkt. 13)**

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On November 21, 2016, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to Administrative Order No. 24 entered on January 29, 2018, this matter was assigned and referred to the undersigned magistrate judge. *See* Text-Only entry dated 1/29/18. This matter is before the Court on plaintiff's motion for judgment on the record. (Dkt. 13). The Commissioner filed a response to plaintiff's motion. (Dkt. 15).

    B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claims for period of disability and disability

1

insurance benefits on October 9, 2012, alleging disability beginning on June 26, 2009.  (Tr. 9).[1]  The claim was initially disapproved by the Commissioner on May 7, 2013.  (Tr. 69).  Plaintiff requested a hearing, and on June 9, 2014, she appeared with counsel and testified, before Administrative Law Judge (ALJ) Juliana Heaton, who considered the case *de novo*.  (Tr. 29-57).   In a decision dated September 22, 2015, the ALJ found that plaintiff was not disabled.  (Tr. 9-24).  Plaintiff requested a review of this decision (Tr. 5), and the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on September 25, 2017.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for judgment on the record be **DENIED** and that the findings of the Commissioner be **AFFIRMED**.

## II.     THE ALJ'S DECISION

Plaintiff was born in 1964 and was 50 years old, an individual closely approaching advanced age, on the alleged disability date.  (Tr. 23).  Plaintiff has past relevant work history as a registered nurse (skilled work, performed at medium exertion) and fast food worker (unskilled work, performed at light

---

[1]  The Transcript of Social Security Proceedings is cited to throughout this Report and Recommendation as "Tr.," and can be found at Docket Entry 18.

exertion). (Tr. 23). In a decision dated September 22, 2015, the ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 11). At step two, the ALJ found that plaintiff had the following severe impairments: Crohn's disease, pancreatitis, cholelithiasis, major depressive disorder, and substance abuse disorder. *Id.* At step three, the ALJ concluded that plaintiff's severe impairments did not meet or equal any listed impairment. (Tr. 12-13). The ALJ found that plaintiff had the residual functional capacity to perform full range of work at all exertional levels as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that she must avoid heights and hazards, and she cannot climb ladders, ropes, or scaffolds. In addition, she can no more than occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She can understand and remember simple and detailed but not complex tasks. She can no more than occasionally interact with coworkers, and must avoid any interaction with the general public.

(Tr. 13). At step four, the ALJ found that plaintiff could not perform any of her past relevant work as a registered nurse or fast food worker. (Tr. 23). At step five, the ALJ concluded that, based on the vocational expert testimony, plaintiff could perform a significant number of jobs available in the national economy with her

3

RFC. (Tr. 24). Thus, the ALJ found plaintiff was not disabled under the Act from the application date through the date of the decision. (Tr. 25).

## III. DISCUSSION

### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If the claimant does not obtain relief during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

4

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled before the expiration of their insured status. Title XVI benefits are available to poverty stricken adults and children who become disabled. While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th

Cir. 2007). F. Bloch, Federal Disability Law and Practice § 1.1 (1984).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two: If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.
>
> Step Three: If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four: If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the

> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At step five, the Commissioner is required to show that "other jobs in significant

numbers exist in the national economy that [claimant] could perform given [his]

RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20

C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently, and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

      C.      <u>Analysis and Conclusions</u>

           1.      Weighing Ridley Opinion and Medical Records

Plaintiff first argues that the ALJ's conclusion that she was not disabled during the relevant period was not supported by substantial evidence or the weight of the medical proof.  More specifically, plaintiff takes issue with the ALJ's treatment of the opinions and records of Robert Ridley, a licensed professional counselor who plaintiff saw approximately 49 times over a two-year period.  (Dkt. 14, p. 8).  Mr. Ridley diagnosed plaintiff with bipolar disorder, and opined in March of 2013 that she had moderate limitations in performing simple tasks, and marked limitations performing complex tasks, interacting with others, and adapting to changes.  (Tr. 19-20, 346-347).  Later, in March of 2015, Mr. Ridley concluded that plaintiff had moderate restrictions in activities of daily living; extreme difficulties in maintaining social functioning; and marked deficiencies in concentration, persistence or pace.  He also indicated that plaintiff had experienced three episodes of decompensations within a 12-month period, with each episode lasting for at least two weeks.  (Tr. 426).  Plaintiff posits that, though Mr. Ridley is a non-acceptable medical source under SSR 06-03p, his assessment of plaintiff is corroborated by Sheila Blalock, A.P.N., a nurse practitioner, and by treating

professionals at the Centennial Medical Center's Parthenon Pavilion. Plaintiff argues that the ALJ's characterization of plaintiff's mental health disorder as depression rather than bipolar disorder is a clear case of cherry-picking the record. She also contends that the ALJ wholly failed to consider her treatment records with A.P.N. Blalock at Infinity Healthcare. She contends that these errors require reversal of the ALJ's decision pursuant to Sentence Four.

The Commissioner contends that the ALJ properly weighed the medical opinions in the record pursuant to 20 CFR § 404.1529(c)(3)(vii). According to the Commissioner, the ALJ's conclusions that plaintiff's complaints aligned more closely with depression rather than bipolar disorder and the functional limitations attendant thereto, are substantially supported in the record. In particular, the Commissioner points to the consultative evaluation performed by Stephen Hardison, M.A. and Carolyn Valerio, Psy.D., in which they concluded that plaintiff could perform simple and detailed instructions, and had mild limitations in responding to changes, mild to moderate limitations in sustaining concentration and attention, and moderate limitations in social interactions. (Tr. 20-21, 351-354). Moreover, the Commissioner argues the ALJ was correct to discount Mr. Ridley's conclusions to the extent that he relied in on plaintiff's subjective reports when not adequately supported by objective evidence. (Tr. 20). Of particular note,

says the Commissioner, is the fact that the record does not reflect three periods of decompensation of an extended duration.

The Commissioner further posits that it is the role of the ALJ to resolve conflicts between medical opinions. *See Justice v. Comm'r of Soc. Sec.*, 515 Fed. Appx. 583, 588 (6th Cir. 2013) ("In the battle of the experts, the agency decides who wins."). In plaintiff's case, the ALJ gave great weight to Dr. Valerio's and Mr. Hardison's opinion based on its consistency with the record evidence – including the opinions of state agency medical consultant Jayne Dubois, Ph.D. (Tr. 22, 63-64, 66-67) and reviewing physician Brad Williams, M.D. who respectively opined that plaintiff could (1) perform higher level multi-step tasks, interact appropriately with others, and adapt to infrequent workplace changes (Tr. 22, 63-34, 66-67); and (2) perform simple and detailed tasks, interact appropriately with others, and adapt to infrequent workplace changes. Conversely, she gave Mr. Ridley's opinions from March 2013 and March of 2015 little weight. (Tr. 23). In addition to the fact that Mr. Ridley's opinions were based primarily on plaintiff's subjective complaints that were unsupported by objective medical evidence, the Commissioner also points out that the opinions were inconsistent with her activities in attending a country music festival and traveling out of state to tend to a sick relative. (Tr. 14, 17, 18, 51, 380, 547). And, medical providers' descriptions of plaintiff as cooperative and pleasant were also incongruent with a conclusion

that she had extreme limitation in maintaining social functioning. (Tr. 306-307, 351, 439, 442, 574).

In the view of the undersigned, the ALJ properly weighed Mr. Ridley's opinions and medical evidence. As plaintiff has acknowledged, Mr. Ridley is not an acceptable medical source under the regulations. The regulations describe "acceptable" medical sources as those who may establish whether an individual has a medically determinable impairment. *See* 20 C.F.R. § 404.1513 ("Medical and other evidence of your impairment(s)."). Social Security requests and evaluates opinions from acceptable medical sources, but "other" medical sources (including nurse practitioners, physician assistants, chiropractors, and therapists) may also provide opinions and evidence. *See id.* "Other sources" include medical sources, such as therapists, which are not "acceptable medical source" under the regulations. 20 C.F.R. § 416.913(d)(1). While "Other sources" may provide evidence as to the severity of a claimant's impairment as well as the effects the impairment has on the claimant's ability to work, they "cannot establish the existence of a disability." *Baker v. Colvin*, 2016 WL 6501361, at *9 (E.D. Tenn. Aug. 22, 2016), report and recommendation adopted, 2016 WL 6496239 (E.D. Tenn. Nov. 2, 2016) (citing *Engebrecht v. Comm'r of Soc. Sec.*, 572 Fed. Appx. 392, 398 (6th Cir. 2014). Accordingly, opinions rendered by "other sources" are not subject to any special degree of deference. *Noto v. Comm'r of Soc. Sec.*, 632

Fed. Appx. 243, 248-49 (6th Cir. 2015) ("The opinion of a 'non-acceptable medical source' is not entitled to any particular weight or deference—the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record.").

In considering Mr. Ridley's opinions here, the ALJ properly took into account whether his opinions were supported by objective medical evidence in the record. The ALJ enjoys broad discretion in evaluating the opinions of non-acceptable medical sources. *See Brown v. Comm'r of Soc. Sec.*, 591 Fed. Appx. 449, 451 (6th Cir. 2015). In *Brown,* the Sixth Circuit observed that the weight to be given such opinions "depends on the facts of the case, the totality of the evidence presented, and the probative value of the opinion." *Id.* In this case, the ALJ noted that the extreme limitations that Mr. Ridley noted came from his reliance on plaintiff's own subjective complaints, and she thus properly discounted those stated limitations. *Griffith v. Comm'r of Soc. Sec.*, 582 Fed. Appx. 555, 564 (6th Cir. 2014) (citing 20 CFR § 416.927(b)); *Bell v. Barnhart*, 148 Fed. Appx. 277, 285 (6th Cir. 2005) (Opining that a medical source's reliance on a claimant's self-reports alone is insufficient to support a finding of impairment) (citing *Young v. Sec'y of Health and Human Svcs.*, 925 F.2d 146, 151 (6th Cir. 1990) (finding that ALJ correctly rejected treating clinical psychiatrist's opinion that the plaintiff

suffered from a severe mental impairment when that opinion was not supported by clinical test results).

As noted by the Commissioner, Mr. Ridley's conclusion that plaintiff suffered from three episodes of decompensation for periods of extended duration is simply not supported in the record. Indeed, inasmuch as extended duration means a period of at least two weeks**,** there is no evidence that plaintiff experienced even one such episode. Her sole hospitalization for mental health reasons lasted only five days. (Tr. 433-496). Mr. Ridley's opinion was not supported by any treatment notes. Furthermore, Mr. Ridley's opinion is inconsistent with the opinions of acceptable medical sources, who found less severe limitations. Dr. Valerio and Mr. Hardison, Dr. Dubois and Dr. Williams all opined that plaintiff's ability to perform simple and detailed tasks, to interact appropriately with others, and to respond to infrequent changes in the workplace ranged from no limitation to moderate limitation. These opinions were largely consistent with one another, and were supported by objective evidence in the record. Additionally, in considering the opinions of the acceptable medical sources, the ALJ properly noted the treatment relationships of the sources, their familiarity with Social Security policies and regulations, and their opportunity to review the medical record. (Tr. 21-22). Thus, the ALJ took into account factors set forth in the 20 CFR § 404.1520c(c) for evaluating medical opinions. It is well-established that, under

certain circumstances, opinions from reviewing State agency physicians "may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p; 1996 WL 374180, at *3; *Brooks v. Comm'r of Soc. Sec*., 531 Fed. Appx. 636, 642 (6th Cir. 2013) ("[O]pinions from State agency medical and psychological consultants ... may be entitled to greater weight than the opinions of treating or examining sources.") (quoting SSR 96-6p, 1996 WL 374180, at *3); *Benson v. Colvin*, 2014 WL 3919577, at *9 (E.D. Ky. Aug. 11, 2014) ("[I]t is not a per se error to give more weight to the opinion of a non-examining physician than that given to an examining or treating physician's opinion."). Indeed, the opinions of state agency medical and psychological consultants may be entitled to significant weight where they are supported by record evidence. *Lee v. Comm'r of Soc. Sec.*, 529 Fed. Appx. 706, 713 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(e)(2)(i); 416.927(e)(2)(i). Moreover, plaintiff's decisions to attend a music festival and travel out of state are not consonant with a conclusion that she had extreme limitations interacting with others. (Tr. 14, 16, 18, 51, 380, 547). Consequently, there exists substantial evidence in the record to support the ALJ's weight assignments.

### 2.     Credibility Determination

Plaintiff's next challenge is to the ALJ's credibility determination. Specifically, plaintiff avers that the ALJ improperly discredited her testimony

concerning the severity of her migraines. Plaintiff cites *McCormick v. Sec'y of Health and Human Svcs.*, 861 F.2d 998, 1003 (6th Cir. 1988) apparently to support the proposition that migraine headaches, "are not traced easily to an objective medical condition." In *McCormick* the court found that the plaintiff's claim of disability was not supported by a medical record sufficient to support the level of pain alleged, where the record showed that the plaintiff had taken a six month trip to Florida during which she never once sought medical attention, and the plaintiff's doctors had separately confirmed their success in treating the plaintiff's migraine pain with prescription medication. Plaintiff says that her case is distinguishable from *McCormick* in that the record evidence shows that in March of 2015 she also traveled to Florida to visit her mother, but unlike the plaintiff in *McCormick*, Ms. Davidson obtained prescriptions for additional medication to assist her during her trip. (Tr. 383). Furthermore, she says her attendance at a country music festival was cut short due to her severe stomach pain. (Tr. 547, indicating "Was at CMA fest tonight and pain returned w/ N/V"). In view of these distinctions, plaintiff posits that rather than detracting from, these facts support the credibility of her claim for disability.

While the Commissioner does not expressly address the ALJ's credibility finding, she does argue that the record as a whole supports the ALJ's finding of no disability for the covered period. With regard to migraines in particular, the

Commissioner points out that plaintiff never sought treatment from a neurologist or underwent any diagnostic testing. (Tr. 18, 356, 359).

The ALJ did not err in her credibility determination. Rather, the ALJ fully supported her credibility determination, and there is no compelling reason to disturb this determination. "Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptoms is at issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, statements and other information provided by treating or

examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of his pain are credible. SSR 96-7p, 1996 WL 374186, at *1; *see also* 20 C.F.R. § 416.929. "Consistency between the plaintiff's subjective complaints and the record evidence tends to support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir. 2011).

The ALJ here took into account the entirety of the medical evidence in assessing the credibility of plaintiff's claim that her migraine headaches were disabling. Notably, the state agency medical consultants found plaintiff's headaches not to be severe. (Tr. 62, 77). The ALJ also correctly observed that plaintiff never sought more aggressive treatment, and properly took into account plaintiff's activities including traveling out of state and attending a music festival. (Tr. 18). The ALJ did incorrectly state that plaintiff did not receive prescription medication for treatment of her migraines. *Id.* The record shows that plaintiff received prescriptions for Topomax in August of 2014 and later Propranolol HCI and Fioricet/Codeine and Propranolol HCI in December 2014 and February of 2015 respectively. (Tr. 372, 374, 376, 380, 384). However, this mistake does not undermine her analysis. The record reflects that plaintiff began taking Topomax roughly three months before the expiration of her December 2014 DLI, followed

by prescriptions in early 2015.[2]  In February 2015, plaintiff switched to Fioricet,

suggesting that the Propranolol was not as effective.  (Tr. 380).  However, as

discussed more fully below, plaintiff does not point to, nor is there anything in the

record suggesting that plaintiff's migraines resulted in limitations greater than

those assessed by the ALJ.  *See Green v. Comm'r of Soc. Sec*., 2013 WL 5516046,

at *7 (E.D. Mich. Oct. 4, 2013) ("Plaintiff has provided no evidence to suggest the

existence of any functional limitations that the ALJ should have included.

Therefore, the ALJ did not err when she chose not to include any such limitations

in Plaintiff's RFC.").  Plus, the ALJ considered plaintiff's activities which were not

consistent with limitations.  The ALJ may consider daily activities as one factor in

the evaluation of subjective complaints.  *See Temples v. Comm'r of Soc. Sec*., 515

Fed. Appx. 460, 462 (6th Cir. 2013) ("Further, the ALJ did not give undue

consideration to Temples' ability to perform day-to-day activities.  Rather, the ALJ

properly considered this ability as one factor in determining whether Temples'

testimony was credible.").  Plaintiff's contention that the fact that she sought to fill

her prescriptions before traveling to Florida tends to show disability is not well-

taken.  Indeed, the filling of the prescription shows that she anticipated obtaining

---

[2] *See Ballard v. Comm'r of Soc. Sec.*, 2014 WL 6686771, at *13 (E.D. Mich. Nov. 26, 2014) ("Evidence of disability obtained after the expiration of insured status is generally of little probative value.  In order for evidence of the plaintiff's condition after the  date last insured to be relevant, the evidence must relate back to the claimant's condition prior to the expiration of her date last insured") (citations and quotations  omitted).

adequate relief, such that she could take a relatively lengthy trip to assist with a sick relative. And, if her attendance at the country music concert was interrupted, it appears to have resulted from a flare-up of her abdominal symptoms – not her migraines. Therefore, this fact does not bolster her claim of disability attributable to migraines. In sum, the undersigned finds no reason to disturb the credibility findings of the ALJ.

As to plaintiff's other physical symptoms, the Commissioner properly points out that plaintiff does not appear to have sought out treatment on any consistent basis for abdominal symptoms. Notably, the music festival episode, in which she sought out treatment, occurred after the DLI. (Tr. 566, 579-580). Further, notwithstanding her diagnosis of Crohn's disease, she did not regularly follow up with a gastroenterologist, require surgery or take any specific medication. It is well-settled that the mere diagnosis of an impairment is not enough to show disability; a claimant must also prove its severity and functional impact. *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988). Mere diagnosis does not equate to a disability or any particular functional limitation. *See e.g.*, *Jordan v. Colvin*, 2014 WL 5796713, at *5 (E.D. Ky. Nov. 6, 2014) ("[T]the mere fact that a claimant has been diagnosed with a variety of conditions does not equate automatically with any functional limitation.") (citing *Parley v. Sec'y of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987)); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th

Cir. 1988) ("The mere diagnosis [of a disease] says nothing about the severity of the condition."); *Hill v. Comm'r of Soc. Sec.*, 560 Fed. Appx. 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it.").

### 3. RFC

Plaintiff challenges that ALJ's finding concerning her ability to work on a sustained and continuous basis. She argues that the activities described by plaintiff, her husband and her mental health counselor do not equate to the ability to work on a regular and continuing basis as described in 20 C.F.R. § 404.1572(c). The Commissioner counters that the ALJ's conclusion is supported by substantial evidence. In addition to appropriately weighing the medical opinions, as discussed above, the Commissioner credits the ALJ with considering all of the objective medical evidence in the record and testimony from the administrative hearing in coming to her conclusions about plaintiff's limitations. The Commissioner contends that the ALJ properly found that plaintiff could perform a range of medium work. (Tr. 13)

20 C.F.R. § 404.1545 (2012) provides that the Residual Functional Capacity is "the most you can still do despite your limitations." In the instant case, the ALJ assessed plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the

residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c ) except that she must avoid heights and hazards, and she cannot climb ladders, ropes, or scaffolds. In addition, she can no more than occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She can understand and remember simple and detailed but not complex tasks. She can no more than occasionally interact with coworkers, and must avoid any interaction with the general public. (Tr. 13)

The undersigned concludes that the ALJ properly weighed the medical evidence in the record, and did not err in fashioning plaintiff's RFC. As previously noted, Mr. Hardison, whose opinion was co-signed by Dr. Valerio, diagnosed plaintiff with mood disorder, anxiety disorder and opioid dependence. (Tr. 353). In April 2013, Mr. Hardison observed that plaintiff's grooming and hygiene were adequate, she appeared her stated age, ambulated independently with no notable difficulty, made appropriate eye contact and that her speech and thought processing were clear. He also found her to be "very cooperative." (Tr. 351). Mr. Hardison and Dr. Valerio's functional assessment of plaintiff indicated that she had the ability to remember and carry out very simple one and two-step instructions; and her ability to remember and carry out somewhat more detailed instructions would not be significantly limited. She had mild to moderate (under stress) limitations in sustaining concentration and attention for appropriate periods of time in a structured routine setting. Her ability to interact well with co-workers, supervisors, or the general public "would not appear moderately limited." And,

she experienced mild limitations in responding appropriately to changes in a very structured routine setting. (Tr. 354). The ALJ gave great weight to this opinion because it came from licensed mental health professionals who personally examined plaintiff, and their opinion was consistent with the record as a whole. Additionally, unlike Mr. Ridley, neither Mr. Hardison nor Dr. Valerio maintained any personal or professional relationship with plaintiff to which any type of bias might have attached. (Tr. 21)

Also in April 2013, plaintiff underwent a medical consultative examination with Dr. Dorris. Dr. Dorris noted that plaintiff's spine and peripheral joints appeared normal and showed normal range of motion. Her gait and station were normal, she ambulated without an assistive device, could squat fully, exhibited normal grip strength; and was able to tiptoe, heel and tandem walk. (Tr. 21, 356-360). Dr. Dorris diagnosed plaintiff with Crohn's Disease and headaches. She opined that plaintiff had the following limitations: plaintiff could lift 50 pounds occasionally and 20 pounds frequently; she could sit, stand, and walk for 6 hours, but must avoid heights and heavy machinery. (*Id.*). The ALJ gave Dr. Dorris's opinion great weight, observing that Dr. Dorris is a licensed physician (i.e. an acceptable medical source) who personally examined claimant and her opinions were consistent with the medical evidence as a whole. Similarly, she had no personal or professional relationship with plaintiff which would indicate bias.

The ALJ also gave great weight to the opinions of agency psychological consultants Jayne Dubois, Ph.D. and Brad Williams, M.D.  Drs. Dubois and Williams opined that plaintiff had an affective disorder and substance addiction disorder which caused moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration persistence or pace, and have resulted in no episodes of decompensation of extended duration.  (Tr. 22, 78-79).  She noted that Dr. Dubois and Dr. Williams are licensed psychologists and psychiatrists with no personal or professional relationship with plaintiff indicating bias, who are familiar with Social Security policies and regulations, and who had the opportunity to review plaintiff's medical record.  Further, their opinions were consistent with and supported by the medical record.

The RFC that the ALJ ultimately assessed is consistent with the various limitations described above.  Plaintiff's contention that the ALJ instead, should have accepted the limitations of Mr. Ridley, along with her subjective complaints which were corroborated by her husband is without merit.  As discussed, the ALJ properly afforded little weight to Mr. Ridley's opinions concerning limitations. Although Mr. Ridley enjoyed a relatively long treatment relationship with plaintiff, the ALJ properly observed that he is a non-acceptable medical source whose opinion is not entitled to any particular weight.  Nevertheless, in evaluating his

opinion, the ALJ noted that his opinions were (1) not supported by objective medical evidence, but rather primarily plaintiff's own self-reports; (2) likely influenced by his professional relationship with plaintiff; and (3) not supported by other evidence in the record. Additionally, plaintiff's complaint that the ALJ did not credit nurse practitioner Blalock's records does not change this conclusion. As noted by the Commissioner, the majority of those records relate to treatment after the DLI. Moreover, the ALJ specifically referenced Ms. Blalock's treatment records in her decision. (Tr. 18). Furthermore, plaintiff has not pointed to anything in Ms. Blalock's treatment records referencing any limitations greater than those assessed. Thus, plaintiff has not pointed to any fully credible evidence in the record which would undermine the RFC assessed by the ALJ.

The court finds no err with the ALJ's rationale for discounting Mr. Ridley's opinion. Further, as to plaintiff's own testimony, which was supported by her husband, the ALJ found her claims of limitations less than fully credible based on the facts that the clinical and objective medical evidence failed to support Mr. and Mrs. Davidson's account.

Finally, the ALJ appropriately incorporated the limitations contained in the RFC in the hypothetical posed to the vocational expert. While the hypothetical question is required to set forth the claimant's impairments with reasonable precision, the question need only include those impairments and limitations

supported by the record. *See Winslow v. Comm'r of Soc. Sec.*, 566 Fed. Appx. 418, 421 (6th Cir. 2014) ("The record reflects, however, that the hypothetical questions were proper because the ALJ incorporated all of the functional limitations that she deemed credible."). The vocational expert testified in response to the hypothetical question that such an individual could perform work as a hand packager, a production laborer, and a food product inspector. (Tr. 24, 53-54). *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-513 (6th Cir. 2010). The vocational expert also confirmed that her conclusions were consistent with the DOT. (Tr. 25, 55). Consequently, the ALJ's conclusion that plaintiff was capable of other work, and thus, not disabled is well-supported.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for judgment on the administrative record be **DENIED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Svcs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Svcs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 20, 2018                                     s/Stephanie Dawkins Davis
                                                                  Stephanie Dawkins Davis
                                                                  United States Magistrate Judge
                                                                  Sitting by Special Designation